# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**GROSSMANNS6 FAMILY REAL ESTATE LLC,**
**SUPREME CORES INC, and**
**SETH DIZARD,**
  *as Trustee of The Warren and Ellen Grossmann Living Trust*,

                        **Plaintiffs,**

            **v.**                                        **Case No. 20-CV-905**

**GREAT LAKES SYNERGY CORPORATION,**

                        **Defendant.**

---

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

---

Plaintiffs Grossmanns6 Family Real Estate LLC, Supreme Cores, Inc., and Seth Dizard, as Trustee of the Warren and Ellen Grossman Living Trust (collectively "Grossmanns"), have sued defendant Great Lakes Synergy Corporation for injunctive relief under the Resource Conservation and Recovery Act ("RCRA"), for cost recovery and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and for legal relief under state common law. Great Lakes has moved to dismiss this action on abstention grounds or, in the alternative, to stay the action pursuant to the doctrine of primary jurisdiction. If the action

is not dismissed or stayed, Great Lakes alternatively seeks to dismiss the RCRA claim for failure to state a claim upon which relief can be granted and to strike the jury demand as to the claims for injunctive relief under RCRA and cost recovery under CERCLA.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (*See* ECF Nos. 6, 16.) The motion is fully briefed and ready for resolution.

## BACKGROUND

A dismissal on abstention grounds is governed by the standard for a Federal Rule 12(b)(6) motion to dismiss. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-93 (7th Cir. 2011). The Court "construe[s] the complaint in the light most favorable to the plaintiffs, accepting as true all well-pled facts alleged, . . . and drawing all reasonable inferences in the plaintiffs' favor." *Id.* (citing *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997)). "The court must also consider 'documents attached to the . . . complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 820-21 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

Grossmanns6 Family Real Estate LLC ("Grossmanns6") currently owns a piece of real property located at 5737 W. Mill Road, Milwaukee, Wisconsin (the "Property"). (ECF No. 1, ¶¶ 1, 13.) The Property is roughly triangular and historically has been divided into

2

two separate areas: a western portion and an eastern portion. (*Id.*, ¶ 13.) Grossmanns6 acquired the western portion of the Property in 1985 and the eastern portion in 1995. (*Id.*) Since 1985 Grossmanns6's tenant, Supreme Cores, Inc., has operated a sand core manufacturing business on the western portion of the Property. (*Id.*, ¶ 14.)

In 2012 chlorinated solvent and comingled petroleum contamination were discovered in the Property's soil and groundwater. (ECF No. 1, ¶ 28.) The contamination is present at levels exceeding state standards. (*Id.*, ¶ 50.) After this discovery was reported to the Wisconsin Department of Natural Resources (WDNR), in 2012 the WDNR issued a "responsible-party letter" to Grossmanns6, requiring environmental investigation at the Property. (*Id.*, ¶ 29; *see also* ECF No. 20-1[1].)

During its investigation Grossmanns6 identified Great Lakes as the party responsible for the contamination at the Property. (ECF No. 1, ¶ 30.) Great Lakes, then operating under the name Great Lakes Solvents, operated at the western portion of the Property from approximately 1960 to 1977. (*Id.*, ¶¶ 16, 21-23.) Great Lakes stored and/or distributed solvents and petroleum products at the Property in underground storage tanks, aboveground storage tanks, and steel drums. (*Id.*, ¶¶ 24-27.) Several other entities occupied portions of the Property prior to its acquisition by Grossmanns6. (*See id.*, ¶¶ 16-

---

[1] The Court can consider the responsible-party letter issued to Grossmanns6 without converting the motion to one for summary judgment because the letter is referred to in the complaint and critical to it. The letter conferred upon Grossmanns6 responsibility for remediating the contamination located at the Property; absent the letter, Grossmanns6 would not have incurred any costs associated with that cleanup—the heart of Grossmanns' dispute here.

17, 19.) However, based on Grossmanns6's investigation and the available records, Great Lakes is the only prior user of the Property that distributed or stored chlorinated solvents or petroleum products from or at the Property. (*See id.*, ¶¶ 15, 18, 20.) Grossmanns6 presented these findings to the WDNR, which issued a responsible-party letter to Great Lakes in 2018 for a portion of the Property. (ECF No. 1, ¶¶ 30-31; *see also* ECF No. 20-2[2].) Since then, Great Lakes has been conducting investigation activities in that area of the Property. (ECF No. 1, ¶ 31.)

Based on investigation activities completed at the Property to date, there are two separate contamination source areas on the Property, both of which are within the western portion of the property that Grossmanns6 acquired in 1985: (1) one source area, on the northern part of the western portion of the Property, coincides with the location of some of Great Lakes' historic storage tanks (the "Northern Tank Farm"); and (2) a separate source area on the southern part of the western portion of the Property. (ECF No. 1, ¶ 32.) Great Lakes's operations took place in both source areas of the property, and Great Lakes has acknowledged responsibility for the contamination associated with the Northern Tank Farm area. (*Id.*, ¶¶ 32-33.) According to Grossmanns6, Great Lakes is also responsible for the contamination in and emanating from the second source area. (*Id.*,

---

[2] Like the responsible-party letter issued to Grossmanns6, the responsible-party letter issued to Great Lakes is referred to in Grossmanns' complaint and critical to it. However, the Court has not considered the WDNR's follow-up letters (ECF Nos. 20-3, 20-4, 20-5, 20-6, 20-7, and 20-8) as they are not referred to in Grossmanns' complaint, and the Court declines to take judicial notice of them.

4

¶¶ 34-37, 39.) The contamination has also migrated from both source areas onto the eastern portion of the Property. (*Id.*, ¶ 38.)

While Great Lakes is currently conducting investigative activities with respect to a portion of the Property, its proposed investigation and remedial activities are insufficient to address the extent of the chlorinated solvent and petroleum contamination because Great Lakes' proposed activities only partially address the Northern Tank Farm area of the Property and do not address the impacts in the other areas of the Property. (ECF No. 1, ¶ 40.) As such, in October 2019 Grossmanns sent the U.S. Environmental Protection Agency, the WDNR, and Great Lakes a notice of Grossmanns' intent to sue Great Lakes pursuant to RCRA. (*Id.*, ¶ 41 (citing ECF No. 1-1).) Great Lakes has not taken any further action to address the contamination in either the southern part of the western portion of the Property or the eastern portion of the Property. (ECF No. 1, ¶ 42.) Grossmanns has incurred costs exceeding the sum or value of $75,000 to address the contamination caused by Great Lakes. (*Id.*, ¶¶ 11, 43.)

On June 16, 2020, Grossmanns filed this lawsuit against Great Lakes. (*See* ECF No. 1.) The complaint contains five counts: (1) injunctive relief and attorney fees under RCRA; (2) cost recovery under section 107 of the CERCLA; (3) declaratory judgment for future response costs under section 113(g)(2) of CERCLA; (4) common law nuisance; and (5) trespass. (*See id.*, ¶¶ 44-89.) The matter was randomly assigned to this Court. Great

5

Lakes moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (*See* ECF No. 17.)

<h1 style="text-align:center">DISCUSSION</h1>

Great Lakes argues that the Court should abstain from adjudicating Grossmanns' claims and dismiss the complaint in its entirety as an impermissible collateral attack on state action. Alternatively, Great Lakes asks the Court to stay this matter under the primary-jurisdiction doctrine. Great Lakes contends that the RCRA claim should also be dismissed because Grossmanns has failed to adequately allege one of its elements. Finally, Great Lakes maintains that, if the Court declines to dismiss or stay this action, it should strike Grossmanns' jury demand as to Counts I and II.

## I.    Abstention

Great Lakes first argues that this Court should abstain from exercising jurisdiction over any of Grossmanns' claims under the doctrine set forth in *Burford v. Sun Oil, Co.*, 319 U.S. 315, 317-18 (1943), because allowing this action to proceed in federal court would disrupt the WDNR's ongoing supervision of remediation efforts at the Property. (*See* ECF No. 18 at 10-16; ECF No. 26 at 5-11.)[3]

"Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Adkins*, 644 F.3d at 496 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "This duty to exercise

---

[3] All citations to the parties' briefs reflect the pagination provided by CM/ECF.

6

jurisdiction rests on 'the undisputed constitutional principle that Congress, *and not the Judiciary*, defines the scope of federal jurisdiction within the constitutionally permissible bounds.'" *Adkins*, 644 F.3d at 496 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*")). "Accordingly, a federal court's ability to abstain from exercising federal jurisdiction 'is the exception, not the rule,' and can be justified only in exceptional circumstances." *Adkins*, 644 F.3d at 496 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

"Abstention doctrines are not intended, however, to alter policy choices that Congress itself considered and addressed." *Adkins*, 644 F.3d at 497. "RCRA includes provisions for citizen suits in federal district courts to enforce the law." *Adkins*, 644 F.3d at 486. "In section 6972 of RCRA, Congress specified the conditions under which a citizen suit could go forward and the conditions under which a government enforcement suit would bar a citizen suit." *Id.* A citizen suit under 42 U.S.C. § 6972(a)(1)(B), like the one here, is barred if, after notice is given, the State

- has commenced and is diligently prosecuting an action under RCRA, 42 U.S.C. § 6972(a)(1)(B);

- is actually engaging in a removal action under section 104 of CERCLA, 42 U.S.C. § 9604; or

- has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of CERCLA, 42 U.S.C. § 9604, and is diligently proceeding with a remedial action under that Act, 42 U.S.C. §§ 9601 *et seq.*

42 U.S.C. § 6972(b)(2)(C).

7

This detailed provision shows "that Congress intended to allow a properly filed citizen suit to go forward when the statutory conditions have been met." *Adkins*, 644 F.3d at 497. "Where a citizen suit has satisfied those conditions and is not statutorily barred, Congress has expressed its intent that the citizen suit should proceed." *Id.* "Use of a judge-made abstention doctrine to refuse to hear the case can easily amount to 'an end run around RCRA' and is essentially an end-run around congressional will." *Adkins*, 644 F.3d at 497 (quoting *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998)).

Great Lakes does not assert that Grossmanns failed to give the notice required by § 6972(b)(2)(A) or that Grossmanns' citizen suit is statutorily barred by state action under § 6972(b)(2)(C). (*See* ECF No. 26 at 8.) Grossmanns therefore has "met the relevant conditions set by Congress to have [its] RCRA claim[] heard in federal court." *Adkins*, 644 F.3d at 497. As such, Great Lakes faces "an unusually heavy burden to show that abstention is appropriate under . . . *Burford*." *Id.*

Abstention is appropriate under *Burford* only when "timely and adequate state-court review is available." *NOPSI*, 491 U.S. at 361. If such review exists, federal courts may abstain only in "two narrow situations." *See Adkins*, 644 F.3d at 504. The first is when "a federal court . . . is faced with 'difficult questions of state law' that implicate significant state policies." *Id.* (quoting *NOPSI*, 491 U.S. at 361). The second is "when concurrent federal jurisdiction would 'be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* "In other words, federal courts may

8

abstain when principles of federalism warrant deference to a state's regulatory regime."
*Adkins*, 644 F.3d at 504. Great Lakes contends that the second basis of *Burford* abstention
applies here. (*See* ECF No. 18 at 12; ECF No. 26 at 5.)

"[F]or this second basis of *Burford* abstention to apply, the mere existence of a
statewide regulatory regime is not sufficient." *Adkins*, 644 F.3d at 504. "The state must
'offer some forum in which claims may be litigated,' and this forum must 'stand in a
special relationship of technical oversight or concentrated review to the evaluation of
those claims.'" *Adkins*, 644 F.3d at 504 (quoting *Property & Cas. Ins., Ltd. v. Cent. Nat'l Ins.
Co.*, 936 F.2d 319, 323 (7th Cir. 1991)). "In other words, judicial review by state courts *with
specialized expertise* is a prerequisite to *Burford* abstention." *Adkins*, 644 F.3d at 504 (citing
*Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356, 364 (7th Cir. 1998); *Nelson v. Murphy*,
44 F.3d 497, 501 (7th Cir. 1995)).

Great Lakes argues that abstention under *Burford* is appropriate because
Grossmanns can challenge the WDNR's decisions in state court and because allowing this
action to proceed would disrupt the WDNR's ongoing efforts at the Property.

### A. Whether timely and adequate state-court review is available to Grossmanns

The WDNR issued Grossmanns6 and Great Lakes (at least for a portion of the
Property) responsible-party letters in accordance with Wis. Stat. ch. 292, known as
Wisconsin's spills law. The law defines a responsible party as a person (like Grossmanns6
and Great Lakes) "who possesses or controls a hazardous substance which is discharged

9

or who causes the discharge of a hazardous substance." *See* Wis. Stat. § 292.11(3); *see also* Wis. Admin. Code NR § 700.03(51). A responsible party is legally required under the spills law to notify the WDNR upon the discovery of any such discharge, *see* Wis. Stat. § 292.11(2)(a), and to "take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of this state," *see* Wis. Stat. § 292.11(3).

The spills law, however, does not set forth a process to adjudicate disputes in situations like the one here, where there is more than one responsible party at a particular site. *See generally* Wis. Stat. ch. 292 and Wis. Admin. Code NR §§ 700-99. Nor is there a private cause of action for citizens to compel action under the law. Rather, enforcement is left up to the WDNR, which can refer matters of noncompliance to the Wisconsin Department of Justice. *See* Wis. Stat. § 292.11(7)(e).

Nonetheless, Great Lakes maintains that Grossmanns6 has an avenue to challenge the WDNR's decisions in state court. (*See* ECF No. 26 at 9-10.) Great Lakes suggests that Grossmanns6 could decline to participate in the WDNR-led investigation, which would either spare Grossmanns6 from incurring additional costs or prompt the WDNR to issue a unilateral order under Wis. Stat. § 292.11(7)(c). Grossmanns6 could then challenge the order in a contested-case hearing before an administrative law judge. *See* Wis. Admin. Code NR § 728.09(2). The ALJ's decision would be reviewable by the secretary of the

10

WDNR. *See* Wis. Admin. Code NR § 2.20. And that decision would be subject to judicial review. *See* Wis. Stat. § 227.52.

There are several problems with Great Lakes' argument. First, it would require Grossmanns6 to abandon the responsible-party process, potentially causing significant delay and subjecting Grossmanns6 to additional expense and liability. Second, it is entirely speculative. Because the WDNR has not issued any orders or taken any action under the spills law aside from issuing responsible-party letters, there is no final agency order or action for Grossmanns to challenge in state court, and it's unknown what the WDNR would do if Grossmanns6 stopped participating in the voluntary process. Third, it's unclear whether the procedure described by Great Lakes would allow Grossmanns6 to accomplish what it seeks here—that is, to adjudicate its claim against Great Lakes. Finally, even if it did, judicial review would ultimately be in Wisconsin's courts of general jurisdiction, *see* Wis. Stat. § 227.52, not a state court with specialized expertise in environmental matters, *see Int'l College of Surgeons*, 153 F.3d at 363-65 (affirming the denial of abstention under *Burford* because the decisions of the state agency were reviewed in state courts of general jurisdiction); *see also City of Evanston*, 19 F. Supp. 3d at 823 (declining to apply *Burford* abstention because the decisions of the state agency were reviewed in courts of general appellate jurisdiction).

Great Lakes has not demonstrated the availability of timely and adequate state-court review, the first requirement for *Burford* abstention. *See Interfaith Cmty. Org., Inc. v.*

11

*PPG Indus., Inc.*, 702 F. Supp. 2d 295, 308-09 (D.N.J. 2010) (finding no adequate state-court review under New Jersey's spill act).

### B.  Whether allowing this action to proceed would disrupt state efforts to establish a coherent policy with respect to environmental matters

According to Great Lakes, this action is an improper collateral attack on the WDNR's functional allocation of responsibility for the contamination located at the Property, and allowing it to proceed would disrupt the WDNR's ongoing investigation and directives. In support, Great Lakes cites several cases in which federal courts have abstained from hearing challenges to the issuance or denial of hazardous waste permits. (*See* ECF No. 18 at 13-15 (citing *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995); *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156 (4th Cir. 1993); *Ada-Cascade Watch Co. v. Cascade Resource Recovery Inc.*, 720 F.2d 897 (6th Cir. 1983); and *Sugar Loaf Citizens Ass'n v. Montgomery County, Md.*, No. 93-2475, 1994 U.S. App. LEXIS 30215 (4th Cir. Aug. 17, 1994).) Grossmanns contends that the regulatory process at issue here is distinguishable from the permitting process involved in those decisions and that Great Lakes has failed to demonstrate that this action interferes with the WDNR's efforts. (*See* ECF No. 24 at 26-31.)

Although the Court of Appeals for the Seventh Circuit has indicated that "there may be room for applying [*Burford* abstention] in cases in which a state has a formal administrative proceeding in progress that the citizens' suit would disrupt," *PMC*, 151 F.3d at 619, Great Lakes has failed to demonstrate that this is one of those rare cases.

12

According to Seventh Circuit caselaw, the actions taken by the WDNR here are not disruptive of an ongoing formal administrative proceeding. Though permitted by Wisconsin's spills law, the WDNR has not issued any orders or initiated any enforcement actions with respect to the Property. Rather, the agency's only "actions" include sending Grossmanns6 and Great Lakes responsible-party letters and providing oversight of the remedial efforts. This is the type of "informal" action the Seventh Circuit found insufficient for abstention in *PMC*. *See PMC*, 151 F.3d at 618-19. Great Lakes has made little effort to distinguish that case.

In *Adkins*, the Indiana Department of Environmental Management and VIM Recycling, Inc., entered into an agreed order concerning VIM's solid waste disposal practices. *Adkins*, 644 F.3d at 488. After VIM failed to comply with the agreed order, the state agency filed an enforcement action in state court. *See id.* Later, while that state-court action was still pending, a group of citizens filed a RCRA suit against VIM in federal court. *Id.* at 489. The district court granted VIM's motion to dismiss the federal suit on abstention grounds. *Id.* at 490.

On appeal the Seventh Circuit reversed, finding that the district court abused its discretion in abstaining under *Burford*. *See id.* at 503-07. The court determined that the same permitting decision cases relied upon by Great Lakes were "easily distinguishable" because "[t]hey all amounted to improper collateral attacks on permitting decisions for which there were other channels for judicial review," and because the plaintiffs in those

cases "were acting contrary to the states' respective decisions to issue the permits in question." *Id.* at 505-06.

This case is more like *Adkins* (and *PMC*) than the permitting decision cases distinguished in *Adkins*. First, unlike in the permitting decision context, Wisconsin's spills law does not establish a comprehensive regulatory scheme for resolving environmental disputes. The law broadly defines a responsible party as anyone who possesses or controls a hazardous substance or who causes the discharge of a hazardous substance. *See* Wis. Stat. § 292.11(3); *see also* Wis. Admin. Code NR § 700.03(51). However, the law does not set forth a formal process for determining who caused the discharge, for challenging a responsible-party letter in a specialized forum or proceeding, or for seeking contribution from other potentially liable parties. *See generally* Wis. Stat. ch. 292 and Wis. Admin. Code NR §§ 700-99. The lack of a statutory right to seek contribution (as well as the lack of timely and adequate state-court review) distinguishes the present action from *Space Age Fuels, Inc. v. Standard Oil Co.*, Civil No. 95-1637-JE, 1996 U.S. Dist. LEXIS 3654, at *6-8 (D. Or. Jan. 24, 1996), *rec. adopted*, 1996 U.S. Dist. LEXIS 3652 (D. Or. Feb. 29, 1996), the only non-permitting-decision case relied upon by Great Lakes, *see Interfaith*, 702 F. Supp. 2d at 309-10 (distinguishing *Space Age*); *Morton College Bd. of Trs. v. Town of Cicero*, 18 F. Supp. 2d 921, 928 (N.D. Ill. 1998) (same).

Second, allowing this action to proceed will not disrupt the WDNR's ongoing regulatory efforts. It is undisputed that the WDNR issued Great Lakes a responsible-

14

party letter because the available information shows that Great Lakes caused the contamination located in the Northern Tank Farm area. As to the contamination located in other parts of the Property, Grossmanns6 is a responsible party only because it is the current owner of the Property. But the WDNR has not conclusively determined that Great Lakes didn't cause the contamination located there, too. Continuing this action will result in one of two outcomes: (1) Grossmanns loses and is therefore liable for the contamination located in the southern part of the western portion of the Property and eastern portion of the Property; or (2) Grossmanns wins, shifting liability for all of the contamination to Great Lakes. Neither outcome would disrupt Wisconsin's ability to create a coherent environmental policy, as the contamination will be cleaned up in either scenario. *See PMC*, 151 F.3d at 619 ("The state proceedings (if they can even be called that) are informal, . . . and the citizens' suit merely concerns the allocation of clean-up responsibilities among responsible parties."); *Morton College*, 18 F. Supp. 2d at 925-28 (finding no disruption where the federal action merely addressed liability for the condition of the property at issue); *Interfaith*, 702 F. Supp. 2d at 309 ("The mere fact that a state agency has taken some action on the waste at issue here does not make this Court's subsequent involvement a disruptive intrusion into the state's capacity to create a coherent policy."). Put another way, in enacting its spills law, Wisconsin does not appear to be concerned with *who* is ultimately responsible for remediating hazardous discharge so long as it gets done.

15

Accordingly, Great Lakes has failed to demonstrate that Wisconsin's ability to create a coherent environmental policy would be disrupted by this Court's exercise of federal jurisdiction, the second basis for *Burford* abstention. Because Great Lakes has failed to demonstrate an entitlement to relief under *Burford*, abstaining here would be an abuse of discretion.

## II.     Primary jurisdiction

Great Lakes argues in the alternative that the Court should stay this matter under the primary-jurisdiction doctrine "to permit WDNR to complete its work." (*See* ECF No. 18 at 11-12; ECF No. 26 at 11-12.)

The doctrine of primary jurisdiction "comes into play when an issue arising in a lawsuit is one that the legislature has confided for determination to an administrative agency." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 651 (7th Cir. 2002) (citing *United States v. Western Pacific R. R.*, 352 U.S. 59, 63-64 (1956); *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001)). "When properly invoked, . . . the doctrine requires that the suit be stayed until the agency resolves the issue, whereupon the lawsuit resumes if the agency's resolution (assuming it survives review by whatever court has jurisdiction to review the agency's decisions) has not resolved the entire controversy." *Marseilles*, 299 F.3d at 651 (citation omitted). In other words, the doctrine "gives an agency the first and often the last crack at resolving issues within its domain." *PMC*, 151 F.3d at 619 (citations omitted).

16

Because the Seventh Circuit has determined that, in the context of RCRA citizen suits, the doctrines of abstention and primary jurisdiction are merely "different labels for the same thing," *see PMC*, 151 F.3d at 619, Great Lakes's primary jurisdiction argument rises, and in this case falls, with its *Burford* abstention argument.

### III.    RCRA claim

Next, Great Lakes argues that the Court should dismiss Count I of the complaint because Grossmanns failed to allege an element of its RCRA citizen-suit claim. (*See* ECF No. 18 at 16-19; ECF No. 26 at 13.)

RCRA provides for two distinct types of citizen suits: "violation" actions under 42 U.S.C. § 6972(a)(1)(A), and "endangerment" actions under 42 U.S.C. § 6972(a)(1)(B). *See id.* Grossmanns' citizen suit is an endangerment action under § 6972(a)(1)(B). (*See* ECF No. 1, ¶¶ 44-56.) That provision allows any person to file a citizen suit

> against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

*City of Evanston*, 19 F. Supp. 3d at 821 (quoting 42 U.S.C. § 6972(a)(1)(B)). To state a claim under § 6972(a)(1)(B), a plaintiff must allege three things: "(1) that the defendant has generated solid or hazardous waste, (2) that the defendant is contributing or has contributed to the handling of this waste, and (3) that this waste may present an imminent and substantial danger to health or the environment." *City of Evanston*, 19 F. Supp. 3d at 821-22 (quoting *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir.

17

2002)). Great Lakes argues that Grossmanns has not adequately alleged that the contamination at the Property presents an imminent and substantial endangerment to health or the environment.

Great Lakes is not entitled to dismissal of Grossmanns' RCRA claim at the pleading stage. "Precedent holds that '[i]mminence does not require an existing harm, only an ongoing threat of future harm.'" *City of Evanston*, 19 F. Supp. 3d at 822 (quoting *Albany Bank*, 310 F.3d at 972). The complaint alleges that "[t]here is a substantial and imminent endangerment to public health and the environment as a result of [Great Lakes's] releases of contaminants and disposal of solid and hazardous waste at the Property as the contamination is present in both soil and groundwater on the Property at levels exceeding state standards." ECF No. 1, ¶ 50. It is plausible that this contamination, which has already spread to the eastern portion of the Property (*see* ECF No. 1, ¶ 38), will continue to migrate. Grossmanns has sufficiently pled an ongoing threat of future harm. *See City of Evanston*, 19 F. Supp. 3d at 822 (declining to dismiss RCRA claim at pleading stage).

Great Lakes contends that the WDNR's active management of the Property negates Grossmanns' "boilerplate allegation of imminent endangerment"—that is, Grossmanns has effectively pleaded themselves out of court. But at this stage, Grossmanns need not allege that substantial harm is imminent *despite the WDNR's supervision*. The WDNR has not ordered or approved any remedy, and the agency's mere

18

involvement will not necessarily thwart the threat of future harm. Moreover, all of the RCRA endangerment cases relied upon by Great Lakes (*see* ECF No. 18 at 17-18) were decided at the summary judgment stage or after trial and involved a fact-intensive determination of the imminence element. Dismissal now would be premature.

## IV. Jury demand

Finally, Great Lakes argues that, if Grossmanns' complaint survives dismissal, Count I (injunctive relief and attorney fees under RCRA) and Count II (cost recovery under section 107 of CERCLA) must be tried, if at all, to the bench. (*See* ECF No. 18 at 19-20; ECF No. 26 at 14-15.)

"A party is entitled to a jury in a civil action where the Seventh Amendment or statute provides such a right." *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 958 (N.D. Ill. 2006) (quoting *United States v. Ekberg*, 01 C 50457, 2004 U.S. Dist. LEXIS 6136, at *2 (N.D. Ill. Apr. 12, 2004)). "[T]he Seventh Amendment's jury trial guarantee generally does not extend to equitable claims." *Neumann*, 429 F. Supp. 2d at 959 (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)). And there is no right to a jury trial expressed in either RCRA or CERCLA. *See Metal Processing Co., Inc. v. Amoco Oil Co.*, 173 F.R.D. 244, 245-47 (E.D. Wis. 1997); *see also Neumann*, 429 F. Supp. 2d at 959 (citations omitted).

Although the Seventh Circuit has not yet addressed this issue directly, it appears that a majority of courts—including district courts in this circuit—have concluded that there is no right to a jury trial in an action brought under 42 U.S.C. § 6972 (RCRA) or 42

U.S.C. § 9607 (section 107 of CERCLA), because such actions are equitable in nature. *See Metal Processing*, 173 F.R.D. at 245-46; *see also Neumann*, 429 F. Supp. 2d at 959 (collecting cases).

Grossmanns has made little effort to distinguish this authority. It points to language from *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014), wherein the Seventh Circuit stated that "[e]quity plays no role in a section 107(a) action." (*See* ECF No. 24 at 36.) But that passage is dicta. The issue in *NCR Corp.* was whether the action should proceed under section 107(a) or section 113(f) of CERCLA; the Seventh Circuit did not address the right to a trial by jury under CERCLA. *See NCR Corp.*, 768 F.3d at 690-94.

Grossmanns also argues that, because Counts III, IV, and V are legal claims, and because the legal and equitable claims "implicate common issues," all claims should be tried together before a jury. (*See* ECF No. 24 at 36-37 (citing *Tull v. United States*, 481 U.S. 412 (1987); *Marseilles*, 299 F.3d at 650).) However, Grossmanns never specifies what common issues underly both the equitable and the legal claims. Grossmanns is not entitled to a jury trial on Counts I and II.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Great Lakes's motion to dismiss (ECF No. 17)

is **GRANTED in part** and **DENIED in part**. Grossmanns's demand for a jury trial (ECF

No. 5) is **STRICKEN** as to Counts I and II of the complaint.

Dated at Milwaukee, Wisconsin this 2nd day of November, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

21